# Court of Appeals.

### *June,* 1891.

#### *(Affirming* 7 *N. Y. Crim.* 376).

## PEOPLE *v.* MOST.

### UNLAWFUL ASSEMBLY—PENAL CODE, § 451, SUBD. 3.

If in the opinion of the general term of the supreme court upon the
appeal from a judgment in a criminal case, for any reason ap-
pearing in the record, justice requires a new trial, it has the
power in its discretion to grant it. But the court of appeals as
a general rule deals with questions of law only, and it cannot
review an exercise of the discretion of the general term in grant-
ing or refusing new trials in criminal cases.

It is competent for the law-making power to extend common law
definitions of particular offences so as to include acts not pun-
ishable under the common law, and not embraced within the
common law definition of the offence. Therefore, identity in
the name of offences at common law and under a statute does
not necessarily imply that the same precise constituents and no
others, enter into both.

The offence of unlawful assembly under section 451, subdivision 3
of the Penal Code can only be committed when there is a com-
bination of three or more persons who unite in the threat, or in
the attempt to do one or more of the things specified in the
statute.

Upon a trial of a defendant who is charged under the statute cited
with the crime of participating in an unlawful assembly by the
utterance of "threats tending to a breach of the peace, or an
injury to person or property, or any unlawful act," the partici-
pation of others in the threats of defendant may be shown as
well by their conduct as by their language. In such case words
uttered by one become those of the persons, who by their con-
duct approve of, and assent to them.

Threats made by a defendant under such circumstances are not de-
VOL. VIII.—18.

prived of their criminal character because they relate to acts not presently done, but to be performed at some future time when affairs should be ripe for the fulfilment of them.

Defendant addressed a meeting of anarchists in New York, eulogizing the persons executed at Chicago for the murder of certain policemen and citizens, accusing the jury of bribery, and calling the trial and appellate judges and the governor of Illinois who had refused to pardon the convicted men, murderers, saying that the day of revolution was approaching, and that his hearers should be ready to resist the hirelings of the capitalists; that they had a weapon a hundredfold worse than the soldiers or the police, that "they think they have killed five of our brethren," but that they (the anarchists) would have a hundred or five hundred for every one they had murdered. *Held*, that this glorification of the deeds of the criminals and incitement to murder of public officers for the discharge of their public duty were a violation of the provisions of subdivision 3 of section 451 of the Penal Code.

Threats of personal violence made at an assembly in this state against persons out of the state, constitute the offence of unlawful assembly within our statute.

Upon the question whether the assembly joined in the anarchistic threats of defendant, evidence that the majority of the persons present at the meeting were anarchists, is competent.

Appeal by the defendant Johann Most from an order of the general term of the supreme court of the first department, affirming a judgment of the court of general sessions of the peace entered upon the verdict of a jury convicting him of a violation of subdivision 3, section 451 of the Penal Code, which reads as follows : Whenever any three or more persons, " being assembled, attempt or threaten any act tending towards a breach of the peace, or injury to person or property, or any unlawful act, such an assembly is unlawful, and every person participating therein by his presence, aid, or instigation, is guilty of a misdemeanor." The crime charged was predicated upon the proceedings of a meeting of anarchists held at a hall in rear of a saloon in East Seventh Street in the city of New York, on the evening of the 12th

of November, 1887, the day after Spies and others had been hanged in Chicago for the murder, by means of dynamite bombs and explosives, of a number of policemen. The meeting was addressed by the defendant. The evidence on the part of the prosecution of his utterances on that occasion is found in the testimony of two policemen who were assigned by their superior officer to attend the meeting, and of a newspaper reporter who was also present. Their version of the speech was flatly contradicted by the defendant and ten or more witnesses called by him. The witnesses for the people varied somewhat in their narration of the occurrences on the evening in question, but they substantially agreed in regard to the most material points. It appears from the testimony that a similar meeting appointed to be held on the same evening had been suppressed by the police authorities. There were present at the meeting addressed by Most from eighty to one hundred people, who were, in the main, anarchists, and the defendant openly avowed himself to be one. When he came into the hall he was greeted by the assembly with the words, " Here comes our leader, Father Most." He soon commenced speaking, and the following are among his utterances, as testified to by witnesses for the people : " Brother anarchists, we were to have a meeting in Second avenue, in Florence Hall, over our dead brethren who were murdered in Chicago." " I have just received word that Captain McCullagh and his bloodhounds of police have stopped our meeting." " Let them beware. Hereafter our meetings will be held in secret, and God help them if we catch them in our socials." " It was a shame, and that the police spies,—the police hounds and the capitalistic press, their teeth were filed, were sharp, but that they would be blunted." The speaker then went on to extol the bravery of their brethren who had died on the gallows at Chicago. He also said : " They were not properly hung; the weight was

not heavy enough to break their necks; but their blood
cries to heaven for revenge, and we will revenge them."
"Our brethren in Chicago had not a fair trial; there
was prejudiced evidence; there were capitalists on the
jury; they held our brethren in prison until they could
get perjured evidence to convict them." "If I had
known the executioner who murdered—who strangled—
our brothers, I would never rest until he had shared
their fate." "The day of revolution will soon come.
First of all will be Grinnell; then comes Judge Gary;
then the supreme court of Illinois; then the highest
murderers of the land—the supreme court of the United
States.    The most cowardly of all—Oglesby, the gov-
ernor of Illinois; he must not think because he par-
doned two of our brethren to a lingering death of life
imprisonment, he will be spared." "I again urge you to
arm yourselves, as the day of revolution is not far off;
and, when it comes, see that you are ready to resist and
kill those hirelings of capitalists." "What do we care
for a few soldiers? We have a weapon a hundred-fold
worse than theirs. They think they kill five of our
brethren, but we will have a hundred or five hundred
for every one they have murdered." "I am an anarch-
ist, and am willing to die for its cause." And accord-
ing to one of the witnesses he ended his harangue
with the exclamation: "Rise, Anarchy! Long shall it
live." Grinnell referred to was the prosecuting officer
who conducted the prosecution of the Chicago anarchists.
Gary was the judge who presided at the trial and sen-
tenced them. The supreme court judges of the state of
Illinois were the judges who had affirmed their convic-
tion and sentence. The judges of the supreme court of
the United States had denied their application for writs
of error and *supersedeas*. Oglesby was the governor of
the state of Illinois who had commuted the sentence of
two of the convicted anarchists, and had refused pardon
and commutation to five others. At times during the

course of the address the audience exhibited by their cheers and appearance great excitement and warm approval of the sentiments he expressed, and when the speaker said, " The day of revolution is not far distant," one of the audience rose and said excitedly, " Why not to-night, for we are ready and prepared ? "   During the course of the trial the district attorney sought by offers of evidence (repeatedly made and overruled) to get before the jury the fact that the defendant was the author of a book entitled " A Manual of Revolutionary Warfare," and the offers made embraced references to the contents.   The conduct of the district attorney is criticized by the defendant's counsel as unfair, and was made a point on the application made to the trial judge for a new trial, which he denied.   It is claimed the evidence did not make out the offence charged in the indictment.

The testimony appears more fully in the report of the case at general term, in 7 *N. Y. Crim. Rep.* 376, where the indictment is also given.

*Wm. F. Howe* for defendant, appellant.

*DeLancey Nicoll*, district attorney (*McKenzie Semple*, assistant), for the people, respondent.

ANDREWS, J.—But three of the questions presented on the brief of the appellant's counsel can be considered on this appeal.   One of these questions is raised by the exception to the denial by the trial judge of the motion of the counsel for the defendant, made at the conclusion of the evidence on the part of the people, for an instruction to the jury to acquit the defendant on the ground that the evidence was legally insufficient to justify a conviction.   An exception was taken to a question put to a witness for the defendant on cross-examination by the prosecuting officer, and which was allowed by the court,

as to his belief in a Supreme Being.    A third exception was taken to evidence offered by the prosecution and admitted, that the persons present at the meeting at Kraemer's Hall on the evening of November 12, 1887, were anarchists.    By the decision of the general term, affirming the conviction and judgment of the trial court, questions as to the credibility of witnesses and the weight and preponderance of evidence are eliminated from the controversy, as well as every consideration bearing upon the propriety of granting a new trial, in the exercise of judicial discretion, upon the ground that the jury were prejudiced by offers of evidence persistently made by the prosecuting officer, and repeatedly overruled, which offers, as is claimed, were persisted in in order to bring before the jury irrelevant facts having no legitimate bearing upon the issue to be decided.    If, in the opinion of the general term, for any reason appearing in the record, justice required a new trial, it had the power in its discretion to grant it.    But this court, as a general rule, deals with questions of law only, and it cannot review an exercise of the discretion of the general term in granting or refusing new trials in criminal cases.    The main question relates to the sufficiency of the evidence to support the charge in the indictment.    In order to ascertain in what the offence of an unlawful assembly consists, reference must be had primarily to the statute which defines it.    It was an offence well known at common law, and common-law definitions may be a material aid in many cases in the interpretation of statute definitions of common-law offences.    But as it is competent for the law-making power to create new offences not before known, so it may extend common-law definitions of particular offences so as to include acts, not punishable under the common law, and not embraced within the common-law definition of the offence.    In other words, identity in the name of offences at common law and under a statute does not necessarily imply that the same

precise constituents, and no others, enter into both. The third subdivision of section 451 of the Penal Code, under which the defendant was indicted, requires that, in order to constitute the offence of unlawful assembly, three or more persons being assembled, should attempt or threaten any act "tending towards a breach of the peace or any injury to person or property, or any unlawful act." The offence can only be committed when there is a concert or combination of three or more persons who unite in the attempt or in the threat to do one or more of the things specified in the statute. A threat made by one or by two persons only, in which no others participated, would not be indictable under this statute, although made in an assembly of many persons. It was also the rule of the common law that three or more persons should be assembled and participate in the unlawful purpose in order to constitute the offence of unlawful assembly or the cognate offences of rout and riot (4 *Bl. Comm.* 146 ; 1 *Russ Crimes,* 288). Unless, therefore, the jury were authorized to find that the threat charged in the indictment was made not only by the defendant Most, but also by at least two other persons, on the occasion in question, the offence was not made out. In determining whether others participated with Most in the threat alleged, it was not necessary that it should affirmatively appear that other persons present uttered or repeated the same words used by Most. Their participation could be shown by their adoption of his language, exhibited by their conduct. If the jury were authorized to find that the persons present were under the influence of similar sentiments, and that they (to the number of two or more) adopted his language as their own, then the threats, though only uttered by him in words, were also those of the persons who by their conduct approved of and assented to them. "If any person," said MANSFIELD, C.J., in Clifford *v.* Brandon (2 *Camp.* 370), "encourages, promotes, or takes part in

riots, whether by words, signs, or gestures, or by wearing the badge or ensign of the rioters, he is himself to be considered a rioter." Within this principle the requisite concurrence of the statutory number in the threats uttered by Most was shown or at least there was sufficient evidence of that fact to go to the jury. The assembly had met under the excitement of the hanging of the Chicago anarchists the day before. It was in sympathy with Most, and when he entered the room the persons present hailed him as their leader. They applauded his utterances and cheered him when he denounced the murderers of their "friends and comrades" and threatened revenge. But it is insisted that no threats were proved to have been made by Most; that what he said were prophecies of what would be likely to happen, and not threats that he or others in sympathy with him would commit violence or murder to vindicate their "murdered brethren." It is unnecessary to recall the specific evidence upon this point. The language of Most would under ordinary circumstances be regarded as the ravings of a madman, rather than the deliberate utterances of one who had formed the purpose of avenging supposed wrongs by murder and revolution. It was for the jury, however, to interprete the language used. The denunciations of the government and the officers of the law, with which Most's speech abounded; his advice to arm and to be prepared for the revolution "not far distant"; his declaration that they would avenge the blood of their comrades; his references to the judges and the officials who were concerned in their trial, conviction and execution, and the declaration that Governor Oglesby, although he had commuted the sentences of two of the condemned, would not be "spared" in the general destruction; his reference to the "police bloodhounds," and his exclamation "God help them if they are found in our socials!"—presented evidence, from which the jury had a right to say whether or not the words, some

of which were unmistakably in the form of threats, were in fact used and understood as such, and their finding upon this point adversely to the defendant is conclusive here. Nor is it, we conceive, an answer to the indictment that the threats related to acts not presently to be done, but to be performed at some future time, when affairs were ripe for the revolution predicted. The main purpose of the common law and of the statute relating to unlawful assemblies is the protection of the public peace. Incendiary speeches under the circumstances disclosed in this case, before a crowd of ignorant, misguided men, are not less dangerous because the advice to arm for the redress of grievances and the threats of murder are accompanied with the suggestion that the time is not quite come for action. This is illustrated in this case by the circumstance appearing in evidence that when Most said, "The day of revolution is not far distant," one of the audience rose and said excitedly, "Why not to-night? We are ready and prepared." No one can foresee the consequences which may result from language such as was used on this occasion, when addressed to a sympathizing and highly excited audience. The point that threats of personal violence made in this state against persons in another state, although made at an assembly here, are not within the statute, is untenable. The offence of unlawful assembly, of which the defendant was convicted, was committed here. We are administering our own laws and not the laws of a foreign jurisdiction, and our state may properly pass laws to punish plotters here against the public peace of a sister state. We are of opinion on the main question that a case within the statute was made out for the jury. The common-law offence of unlawful assembly is defined to be "a disturbance of the peace by persons assembling together with an intention to do a thing which, if executed, would make them rioters, but neither executing it nor making a motion towards its execution" (1 *Russ.*

*Crimes*, 275). It is unnecessary to decide whether the circumstances of the present case constitute the offence within this definition. They bring the case within the statute definition, and that is sufficient. The exception to the question put to the witness on cross-examination as to his belief in a supreme being is frivolous. The exception to the proof that the persons assembled at the meeting of November 12 were anarchists is also without force. That they were, in the main, anarchists appears by other testimony. They were addressed by Most as "brother anarchists," and they saluted him as their leader. Moreover, proof that they were anarchists was competent to aid the jury in determining, in connection with other circumstances, this point: whether the meeting joined in the threats made by the defendant. We discover no error in the record, and the judgment should therefore be affirmed. All concur, except FINCH, J., absent.

NOTE.—As to the offence of unlawful assembly under the law of England, see 2 *Stephens' Hist. of Crim. Law of England*, 385 ; *Stephens' Digest of Crim. Law*, Art. 70, and cases cited.