(110 App. Div. 58)

### ADAMSON v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. December 29, 1905.)

1. MUNICIPAL CORPORATIONS—LIABILITY FOR INJURY BY MOBS—RIOTS.

General Municipal Law, Laws 1892. p. 1740, c. 685, § 21, provides that a city shall be liable to a person whose property is destroyed or injured therein by a mob or riot for the damages sustained thereby. Pen. Code, § 449, provides that whenever three or more persons, having assembled for any purpose, disturb the public streets by using force or violence to any other person or to property, or threaten or attempt to commit such disturbance, or to do an unlawful act by the use of force or violence, etc., they are guilty of riot. *Held*, that said section 21 is to be construed in view of the common-law definition of riot; the definition in the Penal Code being merely a legislative definition, not bound to embrace all the elements of the offense as defined by the common law.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 1558.]

2. SAME—EVIDENCE—SUFFICIENCY.

Under General Municipal Law, Laws 1892, p. 1740, c. 685, § 21, making a city liable to one whose property is destroyed by a mob or riot, if such person shall have notified the mayor of the city of a threat or attempt to destroy or injure his property by a mob or riot, immediately upon acquiring such knowledge, evidence in an action against a city that on the afternoon of an election day a crowd, varying at different times from 8 to 30 in number, made up of "young fellows, men, a lot of boys," with an ax, a crowbar, a rope, and sticks, partially demolished an unoccupied building belonging to plaintiff and removed parts thereof, and that on notification police officers at once went to the scene, whereupon the crowd dispersed, one boy, 11 years old, being arrested, and there being no proof that defendant city had any notice of any such acts or of any threat thereof, or that it had any reason to apprehend that any attempt would be made to injure the premises, did not justify a judgment for plaintiff.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 1558, 1559.]

Appeal from Trial Term, Kings County.

Action by John Adamson against the city of New York. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and RICH, JJ.

James D. Bell (James W. Covert, on the brief), for appellant.
Paul Eugene Jones, for respondent.

JENKS, J. I think that this case is within the reasoning and the rule of Duryea v. Mayor, etc., of New York, 10 Daly, 300, affirmed 100 N. Y. 625. In the afternoon of election day, 1901, a crowd varying at different times from 8 to 30, made up of "young fellows, men, a lot of boys," with an ax, a crowbar, a rope, and sticks, partially demolished an unoccupied and somewhat dilapidated frame tenement in the borough of Brooklyn. As one or another would tear away a window sill, a railing, a part of the stairs, or the like, he would carry it off and then return. The police were notified at about 4:50 p. m., and officers were at once sent to the scene. At the appearance of an officer the crowd broke, scattered, and ran away. One lad of 11 years old was arrested.

Whatever mischief the crowd may have attempted or accomplished, it seems to me like unto that done in Duryea's Case, supra, and that the agency was not a mob or a riot within the contemplation of the statute as interpreted and as applied in that judgment. The liability of the city did not exist at common law, and is not based upon contract, but is purely statutory. Dillon's Municipal Corporations, § 959; Jones' Negligence of Municipal Corporations, § 28; State of Louisiana ex rel. Folsom v. Mayor and Administrators of New Orleans, 109 U. S. 285, 3 Sup. Ct. 211, 27 L. Ed. 936. In the case cited, Field, J., referring to municipal corporations, says:

"They are invested with authority to establish a police to guard against disturbance; and it is their duty to exercise their authority so as to prevent violence from any cause, and particularly from mobs and riotous assemblages. It has, therefore, been generally considered as a just burden cast upon them

to require them to make good any loss sustained from the acts of such assemblages which they should have repressed."

In County of Allegheny v. Gibson, 90 Pa. 419 (35 Am. Rep. 670), in which this question is most elaborately discussed, Paxton, J., says that the liability is "based upon the theory that with proper vigilance the act might and ought to have been prevented." It seems to me that we go too far if we hold that such acts as those in Duryea's Case and in the case at bar were those which a municipality should have prevented by proper vigilance. There is not the slightest proof that the city had any notice of any such act or of any threat thereof, except that given while the demolition was in progress, or that it had any reason to apprehend that any attempt would be made to injure these premises beyond the usual proclivity of the younger generation to seek fuel for the bonfires of election night. The acts done were not, in my opinion, those of a mob, or the result of a riot. They were acts of malicious mischief, more or less concerted, done by stealth, inasmuch as the appearance of a single officer was sufficient to disperse the assembly. The word "mob" in legal use is "practically synonymous with riot, but the latter is the more correct term." Bouv. Law Dict. Greenleaf on Evidence (16th Ed.) vol. 3, § 216, says that, to constitute a riot—

"It is necessary that there be three or more persons tumultuously assembled of their own authority, *with intent mutually to assist one another against all who shall oppose them* in the doing either of an unlawful act of a private nature, or of a lawful act in a violent and tumultuous manner."

This is evidently taken from Hawkins' Pleas of the Crown, vol. 1, c. 65, § 1. The italics are mine. See, too, the definition of C. P. Daly, J., in People v. Judson, 11 Daly, 11, 17, and of Bellowes, J., in State v. Russell, 45 N. H. 83, 85. This element which I have indicated in italics (supra) is embraced in the definition in Words and Phrases Judicially Defined, with the citation of many authorities. See, too, Anderson's Law Dict. In Solomon v. City of Kingston, 24 Hun, 562, affirmed 96 N. Y. 651, the plaintiff hired two or three men to assist him in protecting his property, the crowd became more boisterous, and committed violence upon the chief engineer of the fire department, who attempted to disperse them by a stream of water. The authorities cited in the General Term opinion are Hawkins, P. C., ut supra, and 22 Alb. Law J. 403, where comment is made on Lycoming Fire Insurance Co. v. Schwenk (Pa. Sup. Ct.) 37 Leg. Int. 426, in which case there were elements which indicated that the offenders were ready to assist one another against all who should oppose them. I think that as was said in Marshall v. City of Buffalo, 50 App. Div. 149, 152, 64 N. Y. Supp. 411, we must construe the statute in view of the common-law definition of riot. The definition in the Penal Code is merely a legislative definition, which, of course, was not bound to embrace all of the elements of the offense as defined by the common law. People v. Most, 128 N. Y. 108, 27 N. E. 970, 26 Am. St. Rep. 458.

I advise that the judgment and order be reversed, and that a new trial be granted; costs to abide the event. All concur.