OPINION OF THE COURT
John A. Dillon, J.
This is an appeal by plaintiff from a judgment of the City Court of Buffalo (Drury, J.), granted October 11, 1984, as amended on November 16, 1984, dismissing its claims against all defendants. Defendants Roger Kremblas and the Bank of New York have cross-appealed from so much of the judgment as awarded money damages to defendant Aquino upon his cross claim against them. The decision of the court upon which judgment was granted was issued August 14, 1984 (cf. 125 Misc 2d 620) following a nonjury trial.
i
In June 1975, plaintiff entered into discussions at its offices in Clarence, New York, with Nicholas Aquino for the purchase of a vehicle. However, due to an unfavorable credit report, the purchase was shifted to a three-year lease arrangement and plaintiff required that Nicholas Aquino’s father, defendant James Aquino (who lived in Churchville, New York), be responsible and execute the lease documents. All these discussions were apparently had only with Nicholas Aquino, and the lease documents were either given to him to obtain his father’s "notarized” signature or sent to James Aquino directly for that purpose: "If the purchaser is not present or if he’s out of town, you know, the document can be sent to him and signed in front of a Notary * * * And [the company] will accept that.” It was plaintiff’s policy not to release a car without a notarized signature unless the person had appeared and signed at plaintiff’s place of business.
On June 30, 1975, Nicholas Aquino appeared at the French-Borden branch of the Bank of New York in Lancaster, New York, and spoke with defendant Kremblas, the branch manager who was also a notary public (having become one at the bank’s request). Kremblas opened a checking account there for Nicholas Aquino that day; and, either at the same or roughly the same time, Kremblas signed and affixed his notarial stamp to the lease documents between plaintiff and defendant James *566 Aquino which were signed in front of Kremblas by someone purporting to be James Aquino. Kremblas testified that he understood his actions with respect to the lease documents as saying, in effect, that James Aquino had signed the documents in front of him and had presented proper documentation which verified his identity.
Upon the return to it of the "notarized” documents, plaintiff leased the vehicle (although it remains unclear who took delivery of it). Only one lease payment was made; and, when plaintiff notified defendant Aquino of the breach, he disclaimed all knowledge of the transaction and maintained that his signature had been forged on the lease documents. This litigation ensued.[1]
n
Plaintiff’s cause of action against Kremblas and the Bank of New York for misconduct as a notary in taking the purported signature of James Aquino on the lease documents arises under Executive Law § 135, which, in pertinent part, provides as follows: "For any misconduct by a notary public in the performance of any of his powers such notary public shall be liable to the parties injured for all damages sustained by them.”
The court below found "that the notary, Kremblas, took the acknowledgment without the real person being present, that he did not obtain proper identification, and if he had, the forgery would not have occurred, and that incredibly Nicholas Aquino, who forged his father James’ signature, appeared at or about the same time before the notary, Kremblas, and presented proof of an out-of-State driver’s license in his own name and with it opened a checking account in his own name at the bank. I find, however, that the aforesaid facts do not *567 amount to intentional, fraudulent, or willful conduct, but do amount to gross negligence chargeable to the defendant Kremblas and thus to his employer, the Bank of New York.” (125 Misc 2d, at p 621.) In short, the court below found that a notary was responsible only for his intentional, but not for his negligent acts.
Plaintiff contends in part that the judgment dismissing its claim against Kremblas and the Bank of New York must be reversed because the court below erred in holding "that misconduct of a notary in a civil case is confined to intentional, fraudulent, or willful acts” (supra), and thus applied an incorrect legal standard in deciding the case. Defendants, arguing that no case has ever established "a precise definition of notary misconduct under Executive Law § 135”, contend that "no case has ever extended the definition of misconduct to include mere negligence” and urge that the standard enunciated by the court below be upheld.
The term "misconduct” is not defined within the Executive Law, and the court below relied solely upon a definition of the word found in Black’s Law Dictionary for its holding that such term did not encompass negligent conduct. While it is true that, "[i]n the absence of such statutory definition, the meaning ascribed to a word or phrase by the lexicographers may serve as a useful guidepost” (Quotron Sys. v Gallman, 39 NY2d 428, 431; cf. also, McKinney’s Cons Laws of NY, Book 1, Statutes § 234), such dictionary meaning is not necessarily conclusive: "When the Legislature has failed to assign definition to a statutory term, the courts will generally construe that term according to 'its ordinary and accepted meaning as it was understood at the time’ (People ex rel. Lichenstein v Langan, 196 NY 260, 264). If the term at issue has been judicially defined prior to its use in a statute, however, that definition will be assigned to the term, absent contrary indications (People v Richards, 108 NY 137; see People v Most, 128 NY 108, 113; cf. Orinoco Realty Co. v Bandler, 233 NY 24).” (People v Eulo, 63 NY2d 341, 354.)
The misconduct provision of Executive Law § 135 at issue here (cf. supra, p 566) was first enacted, in somewhat similar form, as part of the comprehensive 1829 revision of the laws of New York (cf. 2 Rev Stats [1st ed], part III, ch III, tit II, § 48 ["For any misconduct in any of the cases where notaries public appointed under the authority of this state, are authorised to act, either by the laws of this state or of any other state, government or country, or by the law of nations or by *568 commercial usage, they shall be liable to the parties injured thereby, for all damages sustained; and shall be subject to criminal prosecution and punishment, in the same cases, and in the same manner, in which other public officers of this state, would be liable for misconduct in any official duty or act, authorised or enjoined, by the laws of this state.”])[2] The 1829 wording was carried through various reenactments and amendments of the law (cf. Birdseye’s Rev Stats [1st ed 1890], at 2100) until 1892, when the Legislature streamlined the language of the statute into much the same form as exists today (cf. Executive Law former § 85 [2] [L 1892, ch 683, § 85]).
In Commercial Bank v Varnum (3 Lans 86, revd on other [evidentiary] grounds 49 NY 269), plaintiff had sued defendant, a notary, for negligence in protesting a bill of exchange. At trial, the court had held that 'T entertain no doubt but that if it shall be established that damage has resulted to the plaintiff from any misconduct of the notary, that he is personally and directly liable to it for all damage sustained, by virtue of 3 R.S., 5 ed., 474, § 37 [former 2 Rev Stats [1st ed], part III, ch III, tit II, § 48] * * * It cannot be necessary to cite authorities to prove that a neglect of a well defined official duty is misconduct, within the meaning of this provision.” (Opn of Mullin, J., reported in 3 Lans 86, 93, n; emphasis added.) On appeal, the General Term of the Supreme Court, First Department, held, in an opinion by Justice (as he then was) Cardozo, that "[w]hatever may be said of the right of the plaintiff to maintain this action independent of the statute (3 R.S., 5th ed., 474, § 37) * * * there can be no doubt of their right to sue the defendant under the [statute] upon the ground of official misconduct. He was a public officer, and undertook to perform *569 an official duty and neglected it. That is misconduct, for which an action lies.” (3 Lans, at p 105; emphasis added.)
Varnum’s authoritative construction in 1870 of the direct statutory predecessor of Executive Law § 135 makes clear that negligence has long been within the compass of misconduct by a notary. Moreover, Varnum itself merely echoed the broad general principle culled from a long line of New York and English cases and restated by our Court of Appeals in Robinson v Chamberlain (34 NY 389, 396) that a person who is charged with the performance of a public duty "is liable for a neglect to discharge that duty, to [anyone], who has thereby sustained special damage.” This is so because the "law presumes that an office is created for the benefit of the public” (supra, p 394); and the principle of liability of any public officer "for a violation of his official duty” (supra, p 395) is deemed "a sound, healthful rule, imparting life and efficiency to officers and security to the public.” (Supra, pp 395-396.) No reason exists to exempt a notary, who "acts as a sworn officer, and is clothed with public authority and confidence” (Nicholls v Webb, 8 Wheat [21 US] 326, 337), from the general rule of Robinson v Chamberlain (supra) and no court has ever departed from such rule in respect of that office.
"Where a word has received a judicial construction it will almost invariably be given the same meaning where it is again used by the Legislature in connection with the same subject. Thus where the same word comes up for construction * * * in connection with a second act, the Legislature is deemed to have had knowledge of the construction which had previously been placed upon it, and to have used it in subservience to such judicial meaning * * * [I]f a statute which had been judicially construed is replaced by a new law containing the same provisions, the former interpretation will, as a general rule, be followed in the construction of the new act. Particularly is this true in the revision or consolidation of statutes, for, in such cases, even a change in phraseology does not necessarily import a change in the meaning of the law. In the case of a revision or a consolidation of statutes, if there is no change in the phraseology of the statute, its former judicial construction becomes a part of the subsequent statute.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 75, pp 162-165.) Since the term misconduct has been used in a consistent manner in the various reenacted statutory provisions concerning the liability of a notary public who is engaged in the discharge of his duties, the holding of the appellate court in *570 Commercial Bank v Varnum (supra) and the general principles of Robinson v Chamberlain (supra) constitute a binding construction of that term, notwithstanding other changes in phraseology that the statute may have undergone since 1829. Negligent acts, therefore, are clearly within the intendment of the statute.
Thus, the court below erred in holding that "misconduct of a notary in a civil case is confined to intentional, fraudulent, or willful acts” (125 Misc 2d, at p 621) and thereafter dismissing plaintiffs claim against defendants Kremblas and the Bank of New York. However, notwithstanding the finding of the trial court that defendants Kremblas and the Bank of New York were grossly negligent in this case, a determination that is amply supported by the record, judgment cannot be entered against them on appeal because there was no finding by the trial court that plaintiff had relied upon the notary’s actions when it proceeded upon the lease documents (cf. 1 Am Jur 2d, Acknowledgments, § 122, at 529; cf. also, Lesser v Wunder, 9 Week Dig 56, 58). While the failure to make a determination on this issue is understandable in light of the trial court’s holding as to the legal standard by which this case was to be decided, it would be inappropriate for me to decide the matter now on the present record, even assuming I had the power to do so (cf. Larkin v State of New York, 84 AD2d 438, 443-444).
Furthermore, a question exists concerning the trial court’s finding that defendant Kremblas took an acknowledgment. This finding implicitly rejected defendants’ argument that Kremblas’ signature and notarial stamp on the lease documents did not constitute an acknowledgment but merely represented that "he autographed the thing and put his stamp on it. That’s all he did.”
"Acknowledgments are used where the person to whom the paper is to be presented may not otherwise know the genuineness of the signature attached or affixed thereto * * * [A]n 'acknowledgment’ is an authentication or verification of the signature to a particular instrument * * * [and] establishes merely that the instrument was duly signed and proves the identity of the person whose name appears thereon and that such person signed it.” (1 NY Jur 2d, Acknowledgments, § 2, at 201.)
An acknowledgment consists "of two distinct parts: the oral acknowledgment by the person making it to the officer before *571 whom it is made that he executed the instrument; and the written certificate by the officer. ” (Id., § 12; emphasis added.) It cannot seriously be maintained that the signature and notarial stamp of Kremblas on the lease documents constituted a proper certification under the law (id., § 15 et seq.), but there is likewise no question that Kremblas and plaintiff construed it as such.
It may well be that the court below believed that Kremblas’ acts amounted to substantial compliance with the formalities needed for a valid certificate, though such conclusion is doubtful (id., § 16). It is also possible that, since any defect in form was occasioned by the notary, the court concluded that both Kremblas and the Bank of New York were estopped from raising such defect by way of defense (cf. 21 NY Jur, Estoppel, §§ 15, 49-50). Moreover, any defect in form, under the circumstances here, might itself constitute misconduct by the notary ("If an officer, in taking and certifying an acknowledgment, acts with the care and diligence that reasonably prudent and cautious persons exercise under like circumstances, he fully performs the duty imposed upon him” [1 NY Jur 2d, Acknowledgments, § 90, at 282]; emphasis added). (Cf. 1911 Opns Atty Gen 550, 552.)
Accordingly, the judgment, insofar as it dismissed plaintiff’s claim against defendants Kremblas and the Bank of New York for misconduct as a notary pursuant to Executive Law § 135, must be reversed and a new trial ordered.
m
Turning to the cross appeal of defendants Kremblas and the Bank of New York against defendant James Aquino, Kremblas and the Bank of New York contend that the court below erred in holding that the cross claim "alleging negligence is not barred by the Statute of Limitations as it was in the main lawsuit (28 NY Jur, Indemnity, § 33, pp 80-81; see Seligson v Chase Manhattan Bank, 50 AD2d 206).” (125 Misc 2d, at p 622.) They maintain that Aquino’s cause of action arose when "Kremblas notarized the forged signature” (June 1975) and that, pursuant to Central Trust Co. v Goldman (70 AD2d 767), the claim was time barred when interposed in 1980 because a three-year Statute of Limitations applied (cf. CPLR 214).
While superficially appealing, I believe that defendants’ argument misses the point of the decision below. The court, in effect, construed Aquino’s claim to be one for indemnity *572 arising out of his having to defend plaintiff’s action which was occasioned by Kremblas’ grossly negligent actions in notarizing the lease documents.
So viewed, Aquino’s claim sounded in implied contract rather than negligence even though it was the tortious or wrongful act of the notary which gave rise to the implied right of indemnity (cf. 23 NY Jur 2d, Contribution, Indemnity, and Subrogation, § 63). As such, the six-year Statute of Limitations applies (cf CPLR 213). "And, since the cause of action is not complete until loss is suffered, familiar Statute of Limitations principles dictate that accrual occurs upon payment by the party seeking indemnity * * * Because the indemnity claim is a separate cause of action, independent of the underlying wrong, this accrual rule remains the same, whatever the underlying breach of duty for which indemnification is sought.” (McDermott v City of New York, 50 NY2d 211, 217-218; cf also, State v Stewart’s Ice Cream Co., 64 NY2d 83.)
It is recognized that "[t]he measure of damages in the case of implied indemnity for tort is the loss or damage sustained by the injured party and paid by the one held to be legally liable, with such incidental expenses as may have been incurred in defending the action.” (23 NY Jur 2d, Contribution, Indemnity, and Subrogation, § 70, at 126; emphasis added; cf. also, Restatement [Second] of Torts § 914.) There can be no question that Aquino would be entitled to recover the expenses of this litigation by way of an indemnity action against Kremblas and the Bank of New York, if he had also paid a judgment to plaintiff occásioned by their tortious conduct. The result should be no different where Aquino has successfully defended such an action on the merits in which he has likewise incurred litigation costs. To hold otherwise would produce the patently absurd proposition that litigation success would compel the indemnitee to absorb his own litigation expenses whereas failure on the merits would permit him to recover them.
Nor is this conclusion in any way contrary to the holding in Central Trust v Goldman (supra). There, plaintiff had successfully defended a prior lawsuit allegedly caused by defendant’s actions. Plaintiff sued defendant for malpractice and fraud to recover its expenses in litigating the prior action. The Appellate Division held that the malpractice action was time barred but permitted the fraud action to proceed. The question of whether an action in implied contract for indemnity would also lie was never presented to the Appellate Division or *573 passed upon by it. Thus, the decision in Central Trust is inapposite to the issue raised in this case.[3]
In light of the finding by the court below that it was the grossly negligent conduct of defendants Kremblas and the Bank of New York which resulted in the forgery of James Aquino’s name on the lease documents, a finding amply supported by the record, and since without such forged signature thereon Aquino would not have been sued by plaintiff under the lease, I find, as did the court below, that Aquino has established his right to recover his litigation expenses against Kremblas and the Bank of New York under a theory of implied indemnity. It follows, then, that the judgment awarding money damages to Aquino must be affirmed.
In sum, the judgment, insofar as it dismissed plaintiff’s claim against defendant Roger Kremblas and the Bank of New York for damages sustained by the misconduct of the notary must be, and it hereby is, reversed and a new trial is ordered, and the judgment is in all other respects affirmed.

. Originally, plaintiff sued only James Aquino, for breach of contract, and obtained a default judgment against him in 1976. This was vacated in 1980. Thereafter, plaintiff served a supplemental pleading, joining defendants Kremblas and the Bank of New York, alleging causes of action for negligence and misconduct as a notary (cf. Executive Law § 135). When Kremblas and the Bank of New York interposed their answer, they cross-claimed against James Aquino for contribution (CPLR art 14) and indemnity (including counsel fees). Aquino then cross-claimed against Kremblas and the Bank of New York for misconduct as a notary and for negligence. On a motion for summary judgment, defendants argued that the Statute of Limitations barred plaintiff’s claims. The court below dismissed plaintiff’s negligence action on that ground but denied dismissal of the notary misconduct claim (cf. 111 Misc 2d 1039).

. At the time, the powers of a notary public were statutorily more limited than today (cf., e.g., L 1859, ch 360, which expanded the powers of notaries by authorizing them to administer oaths and affirmations, and to take acknowledgments "where the same may now be taken and administered by commissioners of deeds”). Such powers, however, included the authority "to demand acceptance and payment of foreign bills of exchange, and to protest the same for non-acceptance and non-payment; and to exercise such other powers and duties, as by the law of nations, and according to commercial usage, or by the laws of any other state, government or country, may be performed by notaries public.” (2 Rev Stats [1st ed], part III, ch III, tit II, §44; emphasis added.) The 1829 misconduct provision was added to the statutes apparently to clarify the liability of a New York notary when acting here at the behest of a foreign authority or under color of foreign law, but otherwise restated existing common-law principles (cf. Revisers’ Reports and Notes, 2 Rev Stats [2d ed], Appendix, at 697).

. Moreover, as a practical matter, even if Kremblas and the Bank of New York had been correct in their contentions on this appeal, they still could not prevail because of my holding that the cause of action for misconduct by the notary is governed by the six-year Statute of Limitations. Such holding would entitle Aquino to recover his litigation expenses under that claim.