BANK ONE, WISCONSIN, Plaintiff-Respondent,

v.

Gregg A. KOCH, Defendant,

Donald STAIR, Defendant-Appellant.†

Court of Appeals

*No. 01–2174. Oral argument April 30, 2002.—Decided June 5, 2002.*

2002 WI App 176

(Also reported in 649 N.W.2d 339.)

† Petition to review denied 9-3-02.

On behalf of the defendant-appellant, there were briefs and oral argument by *George W. Love* of *Love, Voss, Murray & Goeschko* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Penny G. Gentges* and *Steven E. Zablocki* of *Bass & Moglowsky, S.C.* of Milwaukee. There was oral argument by Arthur M. Moglowsky.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. BROWN, J.   Donald Stair seeks compensation for attorney fees he incurred in defending himself against a foreclosure action premised on a forged signature notarized by a bank employee. He argues that WIS. STAT. § 137.01(8) (1999–2000),[1] which holds a notary public liable for "all the damages" resulting from neglect of duty, incorporates attorney fees as compensatory damages. We determine that the statute's reference to "all damages" incorporates the American rule of damages that attorney fees are not recoverable by a prevailing party unless certain exceptions apply. Because none of the exceptions to the American rule apply in this case, we affirm the order of the trial court.

¶ 2.   Stair and his half-brother, Gregg A. Koch, were co-owners as tenants-in-common of real estate located in Waukesha. Koch executed a home equity line of credit agreement with Bank One, Wisconsin, in the amount of $75,000. To secure the agreement, Koch executed and delivered to Bank One a mortgage on his undivided one-half interest in the real property. The mortgage document also contained a notarized signature purporting to be the signature of Stair. Koch defaulted under the payment terms of the credit agreement and mortgage, and Bank One commenced foreclosure proceedings.

¶ 3.   Stair filed an answer and counterclaims, alleging that his signature on the mortgage was forged. Stair sought damages for a frivolous action, slander of title and misconduct of the notary public, a Bank One employee who notarized the forged signature. Stair also requested a declaration voiding the mortgage lien,

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

reasoning that the forged signature on the mortgage failed to create a valid lien. Finally, Stair asked for an award of attorney fees associated with defending the foreclosure action.

¶ 4. In addition to attorney fees, Stair incurred the expenses of hiring a handwriting expert and deposing the notary public, Scott Hall. Hall testified that he did not remember the loan transaction at issue, and that it was not his practice to ask for identification of those persons whose signatures he notarized. Stair contended that Hall's conduct constituted neglect of duty under WIS. STAT. § 137.01(8).[2] Bank One agreed that Hall was negligent but asserted that his conduct did not amount to "neglect of duty."

---

[2] WISCONSIN STAT. § 137.01(8) provides: "If any notary public shall be guilty of any misconduct or neglect of duty in office the notary public shall be liable to the party injured for all the damages thereby sustained."

In addition, WIS. STAT. § 706.07(2)(a) and (f) set forth the duty of the notary public to verify the identification of the person signing the proffered document:

(2) NOTARIAL ACTS. (a) In taking an acknowledgement, the notarial officer must determine, either from personal knowledge or from satisfactory evidence, that the person appearing before the officer and making the acknowledgment is the person whose true signature is on the instrument.

. . . .

(f) A notarial officer has satisfactory evidence that a person is the person whose true signature is on a document if that person:

1. Is personally known to the notarial officer;

2. Is identified upon the oath or affirmation of a credible witness personally known to the notarial officer; or

3. Is identified on the basis of identification documents.

¶ 5. Bank One amended its complaint and brought a motion for default judgment for the foreclosure and sale of the undivided one-half interest of Koch, and for summary judgment dismissing Stair's counterclaims. The trial court granted Bank One's motion for summary judgment and dismissed all of Stair's counterclaims. The court also denied Stair's request for attorney fees. Stair appeals only the issue concerning recovery of attorney fees as damages under Wis. Stat. § 137.01(8).

¶ 6. Stair's theory on appeal is that the conduct of the notary public is attributable to Bank One, subjecting it to liability for damages, which Stair defines as his costs and attorney fees in defending this action. Stair asserts that he is entitled to damages under Wis. Stat. § 137.01(8) and asks us to construe the phrase "all the damages thereby sustained" to include attorney fees. Bank One disputes that Hall's conduct was "neglect of duty." Even if it was, Bank One argues, the statute incorporates the common law definition of damages, the American rule, which requires each party in litigation to bear the cost of its own legal fees unless expressly authorized by statute, contract or pursuant to certain limited circumstances.

¶ 7. We agree with Bank One that according to Wisconsin law, we cannot construe the statute to include attorney fees as an award of damages absent explicit authorization. In *Murray v. Holiday Rambler, Inc.*, 83 Wis. 2d 406, 435, 265 N.W.2d 513 (1978), the supreme court refused to indirectly authorize the recovery of attorney fees not expressly provided for by the Uniform Commercial Code. Similarly, in *Domain Industries, Inc. v. Thomas*, 118 Wis. 2d 99, 101–03, 345 N.W.2d 516 (Ct. App. 1984), we reversed a trial court's award of attorney fees because the applicable statute

did not authorize recovery of attorney fees. We stated that "[s]ince there are statutes that specifically provide for attorney fees, power to award such fees is not implied from statutes that authorize other forms of relief." *Id.* at 101–02. In addition, we noted "the legislature is presumed to have acted with full knowledge of the general rule that attorney fees are not recoverable unless expressly authorized by statute." *Id.* at 103.

¶ 8.    In this case, the statute under which Stair seeks recovery does not expressly authorize an award of attorney fees. Applying the law in *Murray* and *Domain Industries*, we assume that when the legislature enacted Wis. Stat. § 137.01(8), it did so with full knowledge of the American rule requiring each party to shoulder its own attorney fees.

¶ 9.    Stair acknowledges the American rule and the precedent holding that the power to award attorney fees will not be implied from statutes lacking express authorization. Nevertheless, Stair asserts that Wis. Stat. § 137.01(8) was crafted in 1848[3] *before* the American rule existed in common law. Therefore, according to Stair, when this particular statute came into existence, the legislature intended "all damages" to include attorney fees in addition to compensatory damages. Stair's historical argument is based on a misunderstanding of the origin and development of the American rule.

---

[3] The predecessor to the current statute appeared in section 10 of An Act relating to the appointment and duties of Notaries Public, Laws of 1848. The section stated in relevant part:

> For any misconduct in any of the cases where notaries public appointed under the authority of this state are authorized to act either by the laws of this state, government or country or by the laws of nations or by commercial usage they shall be liable to the parties injured thereby for all damages sustained . . . .

¶ 10.  Contrary to Stair's belief, the American rule is firmly rooted in American and Wisconsin jurisprudence prior to 1848. As early as 1796, the United States Supreme Court overturned an award of attorney fees as damages on the ground that "[t]he general practice of the United States is in opposition to it; and even if that practice were not strictly correct in principle, it is entitled to the respect of the court, till it is changed, or modified, by statute." *Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306 (1796). The Supreme Court continues to adhere to that early holding. *See Alyeska Pipeline Serv. Co. v. The Wilderness Soc'y*, 421 U.S. 240, 249–60 (1975) (reviewing origin and development of American rule in federal judiciary system).

¶ 11.  Wisconsin courts were also applying the American rule prior to enactment of the 1848 Laws of Wisconsin. In *Gear v. Shaw*, 1 Pin. 608 (1846), the Supreme Court of the Territory of Wisconsin reviewed the award of counsel fees as part of the plaintiffs' damages in an injunction action. Noting the necessity of hiring counsel to defend in such an action, the court determined that "[a]ll a party could claim, under any circumstances, would be the fees and expenses incident to the injunction." *Id.* at 615. Citing to *Arcamble*, the court concluded that the plaintiffs were entitled to their costs but "the attorney's fees paid are not a legal charge in the assessment of damages." *Gear*, 1 Pin. at 615. *See also Fairbanks v. Witter*, 18 Wis. 301, 304 (1864) (noting that a "jury neither at common law nor by statute could allow counsel fees and expenses as a part of the actual damages").

¶ 12.  We are convinced that the American rule has been applied consistently by the United States Supreme Court since 1796, and by the courts of our

state since 1846, prior to enactment of the statute at issue in this case. Therefore, we conclude that the 1848 legislature that enacted "all damages" intended the American rule of damages which excludes attorney fees.

¶ 13. We also note that WIS. STAT. § 137.01 has been amended several times since its enactment in 1848. *See* WIS. STAT. ANN. § 137.01 (West 2001) (Historical Note). If the legislature had intended to include attorney fees within "all damages," it would have amended the statute to reflect its intention to override the consistent application of the American rule. No such amendment has been made. Pursuant to *Domain Industries*, 118 Wis. 2d at 103, we presume the legislature has acted with full knowledge of the general rule that attorney fees are not recoverable unless expressly authorized by statute.

■

¶ 14. We recognize the inequity involved when an individual is forced to defend his or her interests in a lawsuit in which the individual does not properly belong because of a wrong committed by someone else. At oral argument we explored whether an exception to the American rule might apply in this instance. One such exception is the judicially-created *Weinhagen* rule, an equitable exception that was set forth in *Weinhagen v. Hayes*, 179 Wis. 62, 65, 190 N.W. 1002 (1922). This "third-party litigation" exception permits the award of attorney fees if the wrongful acts of a defendant have involved a plaintiff in litigation with others, or placed him or her in such relation with others as to make it necessary for the plaintiff to incur expenses to protect his or her interest. *Marquardt v. Milwaukee County*, 2002 WI App 12, ¶ 16, 249 Wis. 2d 780, 639 N.W.2d 762, *review denied,* 2002 WI 48, 252 Wis. 2d 150, 644 N.W.2d 686 (Wis. Mar. 19, 2002) (No. 01–0267). At oral argu-

ment, the parties agreed that this is a direct action rather than a third-party action and therefore the *Weinhagen* rule is inapplicable.[4]

¶ 15. We also discussed whether an expansion of the bad faith exception to the American rule, established in *DeChant v. Monarch Life Insurance Co.*, 200 Wis. 2d 559, 547 N.W. 2d 592 (1996), is applicable in this case. In *DeChant*, Monarch Life was found to have acted in bad faith when it refused to provide DeChant with benefits he was entitled to under his disability insurance policy. *Id.* at 571. The court determined that the American rule does not prevent a recovery of attorney fees when an insurer's bad faith compels an insured to retain an attorney to obtain benefits due under the policy. *See id.* at 571–77 (discussing the award of attorney fees based on the tort of bad faith). However, Stair concedes that this is not a *DeChant* case and it would be inappropriate for us to visit this issue further.

¶ 16. In sum, the applicable statute incorporates the American rule of damages and therefore we affirm

---

[4] In contrast, *Independence Leasing Corp. v. Aquino*, 506 N.Y.S.2d 1003 (N.Y. Co. Ct. 1986), is a classic third-party litigation case. In that case, a son forged his father's name on automobile leasing documents notarized by a bank employee. *Id.* at 1004. After the son failed to make payments on the lease, the leasing company sued the father for breach of contract. *Id.* at 1004 n.1. The father successfully defended on the merits. *Id.* The leasing company then joined the bank and the notary as defendants alleging negligence and misconduct of a notary. *Id.* The father cross-claimed against the bank for attorney fees. The court held that the father was entitled to recover attorney fees under a theory of implied indemnity arising out of his having to defend his interest in the leasing company's action which was occasioned by the notary's grossly negligent actions in notarizing the lease documents. *Id.* at 1008.

the trial court's denial of attorney fees. Because our determination of this issue resolves the case on appeal, we do not discuss whether there was neglect of duty on the part of the notary public and, if so, whether the neglect is attributable to Bank One under a theory of respondeat superior. *See Clark v. Waupaca County Bd. of Adjustment*, 186 Wis. 2d 300, 304, 519 N.W.2d 782 (Ct. App. 1994) (If our decision on one issue disposes of an appeal, we need not review the other issues raised.).

*By the Court.*—Order affirmed.