STATE of Wisconsin EX REL. Daniel HARR,
Petitioner-Appellant,†

v.

Gerald BERGE and John Sharpe, Respondents-
Respondents.

Court of Appeals

*No. 03–2611. Submitted on briefs February 23, 2004.—Decided
April 14, 2004.*

2004 WI App 105

(Also reported in 681 N.W.2d 282.)

---

† Petition to review denied 8-2-04.

481

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Daniel Harr*, pro se.

On behalf of the respondents-respondents, the cause was submitted on the brief of *David E. Hoel*, assistant attorney general and *Peggy A. Lautenschlager*, attorney general.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. ANDERSON, P.J.  Daniel Harr appeals from the decision of the trial court that he is not entitled to costs and fees even though he prevailed in vindicating a limited First Amendment right. We affirm, given that the statutory bar preventing prevailing prisoners from recovering costs and fees is supported by the rational basis that the public treasury is not available to finance lawsuits brought by prisoners.

¶ 2. Harr, while an inmate at the Supermax prison, successfully pursued a common law certiorari action to overturn a disciplinary reprimand imposed after prison authorities intercepted a letter to Harr's parents in which he described a corrections officer in derogatory terms. After the circuit court issued its order overturning the disciplinary action taken against Harr, he filed a request for fees and costs totaling $609.18.[1] The State opposed Harr's request, contending that WIS. STAT. § 814.25(2) (2001–02)[2] specifically precluded the court from granting the request. The circuit court, agreeing with the State, denied Harr's motion. Six months after the denial of his request, Harr filed a motion for reconsideration relying upon the decision of another branch of the Dane County Circuit Court, which had held that § 814.25(2) was unconstitutional.[3] The circuit court denied the motion to reconsider and reaffirmed its decision that, under the statute, Harr was not entitled to costs and fees.

¶ 3. Harr appeals. He contends that WIS. STAT. § 814.25(2) violates his constitutional right to equal protection because it prohibits him from an award of costs and fees after he prevailed in a common law certiorari action.

---

[1] Harr sought costs of $209.18 and "invested hours of legal research and briefing, approximately eight hours at $50.00 per hour" of $400.00. He also sought a stipulation from the State for $500.00 in punitive damages in lieu of filing a 42 U.S.C. § 1983 lawsuit.

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[3] *State ex rel. Lindell v. Litscher*, Case No. 02–CV-1272, Dane County Circuit Court.

¶ 4.   The pertinent portions of WIS. STAT. § 814.25 provide:

(1) In this section:

(a) "Prisoner" has the meaning given in s. 801.02(7)(a)2.

(b) "Prison or jail conditions" has the meaning given in s. 801.02 (7)(a)3.

(2) (a) Except as provided in par. (b), if a prisoner brings an action or special proceeding related to prison or jail conditions, no costs may be allowed against the state, a state agency or a county, city, village or town, or against any individual defendant when sued in an official capacity.

¶ 5.   In reviewing a challenge to the constitutionality of a statute, we presume that the statute is constitutional and resolve any doubt in favor of the constitutionality of the statute. *Aicher ex rel. LaBarge v. Wis. Patients Comp. Fund*, 2000 WI 98, ¶ 18, 237 Wis. 2d 99, 613 N.W.2d 849. Both the Fourteenth Amendment to the United States Constitution and article I, section 1 of the Wisconsin Constitution guarantee equal protection of the laws and afford substantially the same protections. *Group Health Co-op. v. DOR*, 229 Wis. 2d 846, 855, 601 N.W.2d 1 (Ct. App. 1999). Equal protection guarantees that similarly-situated persons are treated similarly. *Telemark Dev., Inc. v. DOR*, 218 Wis. 2d 809, 826, 581 N.W.2d 585 (Ct. App. 1998). However, "[e]qual protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is

made." *State v. Post*, 197 Wis. 2d 279, 321, 541 N.W.2d 115 (1995) (citing *Baxstrom v. Herold*, 383 U.S. 107, 111 (1966)). In cases where a statutory classification does not involve a suspect class or a fundamental interest, the classification will be upheld if there is any rational basis to support it. *Milwaukee Brewers Baseball Club v. DHSS*, 130 Wis. 2d 79, 98, 387 N.W.2d 254 (1986). Thus, "[t]he basic test is not whether some inequality results from the classification but whether there exists a rational basis to justify the inequality of the classification." *Id.* at 99.

¶ 6.   The rational relationship test is used to analyze an equal protection challenge where neither a fundamental right is at stake nor a suspect class is involved. *State ex rel. Griffin v. Litscher*, 2003 WI App 60, ¶ 17, 261 Wis. 2d 694, 659 N.W.2d 455. There is no fundamental right to have the loser in a lawsuit or the public treasury reimburse the winner. *See Johnson v. Daley*, 339 F.3d 582, 586 (7th Cir. 2003), *cert. denied*, 124 S. Ct. 1654 (U.S. Mar. 22, 2004) (No. 03–732). This is especially true if the loser is the state, since it is a long-standing rule that costs and fees cannot be taxed against the state without express statutory authority. *Martineau v. State Conservation Comm'n*, 54 Wis. 2d 76, 79, 194 N.W.2d 664 (1972).

¶ 7.   Harr and the State agree that because prisoners do not constitute a suspect class for equal protection purposes, *Johnson*, 339 F.3d at 585–86, "the principle of equal protection requires only that the classification bear a 'rational relation to some legitimate end,' " *State ex rel. Khan v. Sullivan*, 2000 WI App 109, ¶ 9, 235 Wis. 2d 260, 613 N.W.2d 203 (citation omitted).

Under the rational basis test, a statute is unconstitutional if the legislature applied an irrational or arbitrary classification when it enacted the provision. The task of drawing lines between different classifications is a legislative one in which perfection "is neither possible nor necessary." It is not our role to determine the wisdom or rationale underpinning a particular legislative pronouncement. This court therefore must sustain a statute unless we find that "it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest." Recognizing that classifications often are imperfect and can produce inequities, our goal is to determine whether a classification scheme rationally advances a legislative objective. In so doing, we are obligated to locate or, in the alternative, construct a rationale that might have influenced the legislative determination.

*Aicher*, 237 Wis. 2d 99, ¶ 57 (citations omitted).

¶ 8. Harr has the difficult burden to prove that WIS. STAT. § 814.25(2) lacks a rational relationship to a valid government objective. *See Thorp v. Town of Lebanon*, 2000 WI 60, ¶ 44, 235 Wis. 2d 610, 612 N.W.2d 59. Even in the face of an equal protection challenge, we must presume that the statute is constitutional. *Id.* Harr faces the frequently insurmountable task of proving beyond a reasonable doubt that the statute possesses no rational basis to any legitimate state objective. *See id.*

¶ 9. In his attack on WIS. STAT. § 814.25(2), Harr concedes that the Prison Litigation Reform Act (PLRA) is a rational means of limiting meritless litigation by pro se prisoners. He asserts that the State has no compelling interest in preventing him, or any prisoner, from litigating a meritorious claim and that the statute

is, therefore, not rationally related to any state interest. Relying on *Johnson*, 339 F.3d at 587, Harr claims that whether the distinction between prisoners' suits and those brought by free persons is rational depends upon answering the question: "equal *with respect to what.*" He goes on to argue that the underlying action was an attempt to vindicate his First Amendment right of freedom of speech, a right he does not forfeit as a prisoner and his right is equal with the same right held by a free person. He infers that because he has the same right to freedom of speech as a free person, he must be treated identically with a free person who has prevailed on the same claim and be allowed his recovery of costs and fees.[4]

¶ 10.  Harr's argument is unpersuasive. The equal protection clause does not require that all people with the same rights be treated identically, *Post*, 197 Wis. 2d at 321; it only requires that there be a rational basis for the classifications established by the legislature, *Khan*, 235 Wis. 2d 260, ¶ 9. In determining whether there is a rational basis for legislative action which permits a free person to recover costs and fees after prevailing in a

---

[4] We note that deciding the extent of Harr's First Amendment rights is not crucial to our decision. But to prevent this opinion from being cited for Harr's proposition, we note that prisoners do not have First Amendment rights coextensive with those of free citizens. Prisoners only have those First Amendment rights "that are consistent with prison discipline." *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986). In this case, if Harr had communicated the identical derogatory statements about the corrections officer within the walls of the prison, he would have been subject to disciplinary action without a violation of his First Amendment rights. *See Lomax v. Fiedler*, 204 Wis. 2d 196, 554 N.W.2d 841 (Ct. App. 1996).

lawsuit but which bars a prisoner from recovering costs and fees under similar circumstances, we turn to the reasons for the enactment of the PLRA. "The inspiration for passage of the PLRA came from the federal PLRA, which seeks to curtail malicious and frivolous inmate lawsuits about prison conditions." *State ex rel. Cramer v. Schwarz*, 2000 WI 86, ¶ 38, 236 Wis. 2d 473, 613 N.W.2d 591. However, Wisconsin's version of the PLRA is much broader; after reviewing the legislative history of Wisconsin's PLRA, the *Cramer* court wrote that "the legislature intended to address the costly problems caused by prisoner litigation more expansively than the federal law." *Id.*, ¶ 39. To achieve that goal, the legislature designed the PLRA to broadly limit prisoner litigation at taxpayers' expense. *Id.*, ¶ 40. Thus, we see that Wisconsin's PLRA serves two distinct purposes: first, deter frivolous lawsuits and second, limit prisoner litigation that is subsidized by the taxpayer. *Id.*

¶ 11.  We have previously held that "the state has a legitimate interest in deterring frivolous lawsuits and preserving judicial resources." *Khan*, 235 Wis. 2d 260, ¶ 10. Harr has no complaint with our observation:

> Distinguishing between prisoners and non-prisoners is a rational means of limiting frivolous litigation because it has been recognized that prisoners, as a group, have little incentive for refraining from suit, and account for a disproportionate amount of meritless litigation.

*Id.* Harr's complaint is that the PLRA denies him equal protection when it bars him from recovering costs and fees after he has proven the merits of his litigation by winning. His complaint ignores the second goal of Wisconsin's PLRA, "to limit broadly prisoner litigation *at taxpayers' expense.*" *Cramer*, 236 Wis. 2d 473, ¶ 40

(emphasis added). For Harr to be successful, he must convince us that there are no grounds that can be conceived to justify barring the award of costs and fees to a successful prisoner. *See Johnson*, 339 F.3d at 586.

¶ 12. The general rule is that each party bears its own costs of litigation, no matter how meritorious their claim or defense. This general rule is known as the "American Rule"; commonly stated, it provides, "that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor. Each party to a lawsuit, under this theory, should bear its own costs of litigation." *Kremers-Urban Co. v. Am. Employers Ins. Co.*, 119 Wis. 2d 722, 744, 351 N.W.2d 156 (1984). As we recently explained in *Bank One v. Koch*, 2002 WI App 176, ¶¶ 10–11, 256 Wis. 2d 618, 649 N.W.2d 339, *review denied*, 2002 WI 121, 257 Wis. 2d 119, 653 N.W.2d 891 (Wis. Sept. 3, 2002) (No. 01–2174), the "American Rule" is firmly rooted in the jurisprudence of this state; it was adopted by the Supreme Court of the United States in 1796 and by the Wisconsin Supreme Court in 1846.

¶ 13. We agree with the 7th Circuit Court of Appeals that the "American Rule" is one rational solution to the question " 'how much may plaintiffs be allowed to spend for legal services, how much of that must be paid for by the losing side, and how much of the cost of litigation will be covered by the public fisc?' " *Johnson*, 339 F.3d at 591. The "American Rule" also permits the legislature, as representative of the public, to determine by statute the responsibility for the losing side to reimburse the winner for expenses of litigation. The legislature has acted by authorizing the awarding of costs and fees to the prevailing party in limited circumstances. For example, WIS. STAT.

§§ 814.01–814.036 establish when a party may recover costs and fees and WIS. STAT. § 814.04 establishes the costs and fees a party may be awarded. The question becomes whether there is a rational basis to support the legislative determination that a prevailing prisoner is not entitled to costs and fees.

¶ 14. In the case of prisoners who prevail in a common law certiorari action challenging the conditions of confinement, the legislature, in WIS. STAT. § 814.25(2), has concluded the twin goals of the PLRA are best served by denying successful prisoners reimbursement from the public treasury. Under the rational basis test, it is the legislature's duty to develop different classifications, and we review those classifications with the understanding that it is not necessary that this task be completed with perfection. *See Aicher*, 237 Wis. 2d 99, ¶ 57. The rational basis test does not permit us to become a super legislature, to substitute our judgment for that of the legislature. *See id.*

¶ 15. We cannot quarrel with the legislature's conclusion that successful prisoner litigators are not entitled to the reimbursement of any costs. The rational basis test obligates us to locate or construct a rationale that might have influenced the legislative development of classifications. *Id.* We can think of two compelling rationales the legislature could have embraced.

    1.    In the case of prisoner actions challenging the conditions of confinement, the legislature could validly conclude that the successful prisoner should not be reimbursed from the public treasury because the only person who benefited from the litigation was the prisoner. *See Johnson*, 339 F.3d at 591 ("Litigation produces benefits (and

493

sometimes costs) for third parties; it is to this extent a public good, and determining how much of a public good to supply (and at whose cost) is an intractable problem.").

2.    The legislature could reasonably conclude that a prisoner is not entitled to the reimbursement of costs and fees because the prisoner already receives, from the public treasury, paper and pen to draft legal documents, *Kirsch v. Endicott*, 201 Wis. 2d 705, 718, 549 N.W.2d 761 (Ct. App. 1996) (if indigent, a prisoner "must be provided at state expense with paper and pen to draft legal documents"), and law libraries, *State ex rel. Tyler v. Bett*, 2002 WI App 234, ¶ 18, 257 Wis. 2d 606, 652 N.W.2d 800, *review denied,* 2002 WI 121, 257 Wis. 2d 120, 653 N.W.2d 891 (Wis. Oct. 21, 2002) (No. 01–2808). In addition, a prisoner is given access to adequate assistance from "writ writers" and "jailhouse lawyers," *see id.*, a form of assistance a free person is not provided by the State.

## CONCLUSION

¶ 16. The PLRA represents the Wisconsin legislature's attempt to stem the flood of pestiferous prisoner lawsuits, financed from the public treasury. The PLRA does not restrict a prisoner's access to the courts to challenge the conditions of confinement, it does nothing more than bar the access from being subsidized by the public treasury. The PLRA does not violate Harr's rights to equal protection of the laws because there is more than one rational basis supporting the legislative creation of different classifications to be considered when costs and fees are awarded.

*By the Court.*—Order affirmed.