ANN WALSH BRADLEY, J. (dissenting).
¶98 After a harrowing and unimaginable ordeal that resulted in the amputation of all four of Ascaris Mayo's extremities, the majority denies Ascaris and Antonio Mayo 95 percent of the recovery to which a jury determined they are entitled. The majority restricts the Mayos' recovery based on Wisconsin's statutory cap on noneconomic damages in medical malpractice cases, which it now declares to be constitutional. See Wis. Stat. § 893.55.
¶99 This is not the first time this court has addressed the constitutionality of a cap on noneconomic damages in medical malpractice actions. In Ferdon ex rel. Petrucelli v. Wisconsin Patients Comp. Fund, the court determined that a medical malpractice noneconomic damages cap of $350,000 violated the constitutional guarantee of equal protection. 2005 WI 125, ¶ 10, 284 Wis. 2d 573, 701 N.W.2d 440.
¶100 Ferdon exhaustively, and correctly, analyzed the constitutional infirmities of a damage cap of $350,000. The only difference between this case and Ferdon is that the medical malpractice noneconomic damages cap is set at $750,000 rather than $350,000.
¶101 Raising the cap by $400,000 does not fix the fundamental constitutional problems with the damage cap that the Ferdon court identified. The cap still makes the most severely injured bear the greatest burden in violation of equal protection.
¶102 I agree with a unanimous court of appeals that determined that the statutory cap on noneconomic damages remains unconstitutional.[1] The cap imposes "an unfair and illogical burden only on catastrophically injured patients, thus denying them the equal protection of the laws." Mayo v. Wis. Injured Patients and Families Compensation Fund, 2017 WI App 52, ¶ 1, 377 Wis. 2d 566, 901 N.W.2d 782.
¶103 Ferdon identified several areas of constitutional infirmity with regard to the $350,000 cap at issue. As the court of appeals in this case explained, the Ferdon court concluded that the $350,000 damages cap then at issue lacked a rational basis because: (1) the existence or nonexistence of noneconomic damages caps does not affect doctors' migration; (2) defensive medicine is not susceptible to accurate measurement and does not contribute significantly to the cost of health care; (3) the correlation between noneconomic damages caps and lower medical malpractice premiums or overall health care costs is weak; and (4) the cap was unnecessary to the financial integrity of the Fund. Mayo, 377 Wis. 2d 566, ¶ 20, 901 N.W.2d 782 (citing *706 Ferdon, 284 Wis. 2d 573, ¶¶ 168, 174, 166, 158, 701 N.W.2d 440 ).
¶104 Simply raising the cap from $350,000 to $750,000 does not magically transform any of these considerations into rational bases for the legislature's action.[2] I agree with the court of appeals' analysis on each point.
¶105 First, as did the Ferdon court, the court of appeals here concluded that the "current noneconomic damages cap is not rationally related to the legislative objective of retaining physicians in Wisconsin." Mayo, 377 Wis. 2d 566, ¶ 21, 901 N.W.2d 782. It reached this conclusion because data demonstrates that the number of physicians participating in the Fund has increased each year since Ferdon, and that many states with no damages cap at all "actually have higher physician retention rates than Wisconsin."[3] Id.
¶106 Second, in accord with the Ferdon court, the court of appeals here determined that the damages cap is "not rationally related to the legislative objective of curtailing the practice of defensive medicine." Id., ¶22. Rather, the record demonstrates that the financial impact of defensive medicine is not readily measurable, and this has not changed in the time since Ferdon was decided. Id. Further, the requirements that doctors have primary medical malpractice coverage and make contributions to the Fund mean that there is no risk of a doctor facing personal liability for a judgment. Id. As the court of appeals stated, "[t]his lack of uninsured personal liability would logically appear to remove any incentive to practice 'defensive medicine.' " Id.
¶107 Third, the court of appeals concluded that, as in Ferdon, "the record before *707 us does not demonstrate any correlation between medical malpractice premiums and caps on noneconomic damages." Id., ¶ 24. Other jurisdictions, and even medical malpractice insurers, have also failed to establish such a connection. Id.
¶108 Finally, as the court of appeals determined, the record does not demonstrate that the integrity of the Fund rises and falls based on the damages cap. The Ferdon court observed that "the Fund has flourished both with and without a cap." Ferdon, 284 Wis. 2d 573, ¶ 158, 701 N.W.2d 440. This remains true today. The Fund's assets have grown, while both claims and payments have decreased. As the court of appeals concluded, "[i]t is obvious that the Fund's financial solvency has not been negatively impacted by claims when, in fact, the Fund's assets have grown."[4] Mayo, 377 Wis. 2d 566, ¶ 25, 901 N.W.2d 782.
¶109 Before concluding, I observe that the majority's analysis and its overruling of Ferdon depart from the time-honored principle of stare decisis. We decided Ferdon only thirteen years ago. "[R]espect for prior decisions is fundamental to the rule of law." Johnson Controls, Inc. v. Emp'rs Ins. of Wausau, 2003 WI 108, ¶ 94, 264 Wis. 2d 60, 665 N.W.2d 257 (2003).
¶110 "Stare decisis is the preferred course of judicial action because it promotes evenhanded, predictable, and consistent development of legal principles ... and contributes to the actual and perceived integrity of the judicial process." Id., ¶ 95. "The decision to overturn a prior case must not be undertaken merely because the composition of the court has changed." Id.; see also Bartholomew v. Wisconsin Patients Comp. Fund and Compcare Health Servs. Ins. Corp., 2006 WI 91, ¶ 32, 293 Wis. 2d 38, 717 N.W.2d 216 ("No change in the law is justified by a change in the membership of the court[.]").
¶111 Equal protection guarantees that people similarly situated are treated similarly. State ex rel. Harr v. Berge, 2004 WI App 105, ¶ 5, 273 Wis. 2d 481, 681 N.W.2d 282. Yet, the $750,000 damage cap singles out the most severely injured and treats them differently. It places the largest burden on them and guarantees that this specific, vulnerable class of injured patients will receive but a tiny fraction of the compensation due.
¶112 Only those with the most catastrophic injuries will be denied a full and fair damages award. Under the majority's analysis, the Mayos will receive merely five percent of what a jury assessed was due for their noneconomic damages, while those less severely injured will get 100 percent. It makes no sense that those who are injured most get the least. This senseless and unequal result is compounded by the lack of a rational basis for the cap, rendering it unconstitutional.
¶113 This court got it right in Ferdon, as did the unanimous court of appeals in this case.
¶114 For the reasons set forth above, I respectfully dissent.
¶115 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

James B. Thayer, The Origin and Scope of the American Doctrine of Constitutional Law, 7 Harvard L. Rev. 129, 146 (1893).

The strong presumption of constitutionality has not reappeared in any United States Supreme Court decision published in 2013 or thereafter.

Reviewing an issue for "proof by a preponderance of the evidence," i.e., proof that is "more likely than not" true, encompasses the lowest burden of proof used in ordinary civil cases. See Kruse v. Horlamus Indus., Inc., 130 Wis. 2d 357, 362-63, 387 N.W.2d 64 (1986) ; State v. Wanta, 224 Wis. 2d 679, 693, 592 N.W.2d 645 (Ct. App. 1999). It requires the trier of fact to determine the existence of a fact "to a reasonable certainty by the greater weight of the credible evidence." Kruse, 130 Wis. 2d at 362-63, 387 N.W.2d 64.

"This burden, while greater than required in ordinary civil cases, is not as great as 'beyond a reasonable doubt' used in criminal cases." City of Madison v. Geier, 27 Wis. 2d 687, 691, 135 N.W.2d 761 (1965).