PER CURIAM.
¶1 Roger S. Manthe appeals from an order of the circuit court dismissing Manthe's appeal of damage awards issued by the Wisconsin Department of Transportation following the condemnation of property belonging to Manthe. Manthe contends that the circuit court erred in determining that he is not entitled to a writ of mandamus compelling DOT to issue an order designating United States Highway 51 as a freeway. Manthe also contends that WIS. STAT . § 84.295(3) (2017-18)[1] violates his right to equal protection and that he has incurred non-access related damages for which he should have been compensated. For the reasons discussed below, we reject Manthe's arguments and affirm the circuit court.
BACKGROUND
¶2 Manthe is a farmer. His farm consists of two parcels, a west parcel and an east parcel. On the west parcel sits Manthe's family home, a milking operation, and all equipment storage. It is composed of approximately 250 acres and abuts the west side of Highway 51. The south boundary of the west parcel abuts Grinde Road.
¶3 The east parcel is located to the east of Highway 51. It is composed of 77.07 acres. Manthe uses the east parcel to raise young stock, which are housed in a 13,200 square foot heifer barn.
¶4 The two parcels are not contiguous. The east parcel does not abut Highway 51, but has frontage on the road that is designated Grinde Road west of Highway 51, but designated County Highway V east of Highway 51.
¶5 DOT undertook a highway improvement project to expand a portion of Highway 51 from two lanes to four lanes from the southern edge of Manthe's west parcel at a point that is north of the southern boundary, but the record is unclear regarding precisely how far north of the southern boundary. Prior to the project, Grinde Road intersected with Highway 51 at grade level, allowing traffic to cross Highway 51 at that location. As part of the project, that intersection was eliminated so that traffic can no longer cross Highway 51 at that location.
¶6 The highway improvement project resulted in DOT taking 4.58 acres from Manthe's west parcel and 5.41 acres from his east parcel. The project also resulted in Manthe having to travel a greater distance when traveling between the west and east parcels with farm equipment. Prior to the project, Manthe could cross Highway 51 at the intersection of Grinde Road and Highway 51, for a total travel distance of 1.1 mile. Following the project, Manthe's route between the parcels has increased by approximately two miles. The issues on appeal stem from Manthe's quest to obtain compensation for this increased travel time.
¶7 Manthe appealed to the circuit court from DOT's compensation award for the taking of his property. After bringing this action, Manthe and DOT reached a settlement agreement under which the parties agreed that Manthe: is entitled to an additional $30,000 award of damages; waived any claim against DOT for costs and fees; and reserved his right to appeal any rulings and/or order by the circuit court. The circuit court dismissed the action upon the parties' stipulation. Between the inception of the action and the court's order dismissing the action, the parties brought a number of motions upon which the circuit court ruled. Manthe's appeal concerns three of those rulings.
DISCUSSION
A. Writ of Mandamus to Compel DOT to Designate Highway 51 as a Freeway
¶8 Manthe moved the circuit court to issue a writ of mandamus compelling DOT to designate Highway 51 as a freeway. Manthe contends that the circuit court erred by failing to compel DOT to designate Highway 51 as a freeway.
¶9 "A writ of mandamus is a discretionary writ in that it lies within the sound discretion of the [circuit] court to either grant or deny." Miller v. Smith , 100 Wis. 2d 609, 621, 302 N.W.2d 468 (1981). The grant or denial of a writ of mandamus will be affirmed unless the circuit court erroneously exercised its discretion. Id. To determine whether discretion has been properly exercised, we look to determine whether the relevant facts were examined, whether the proper standard of law was applied, and whether, using a demonstrated rational process, the decisionmaker reached a conclusion that a reasonable decisionmaker could have reached. See Flottmeyer v. Circuit Ct. for Monroe Cty. , 2007 WI App 36, ¶17, 300 Wis. 2d 447, 730 N.W.2d 421.
¶10 In order to determine if discretion was properly exercised in denying Manthe's motion for a writ of mandamus, we must engage in statutory construction. On appeal, statutory construction is a question of law, which is subject to de novo review. State v. Cole , 2000 WI App 52, ¶3, 233 Wis. 2d 577, 608 N.W.2d 432.
¶11 Highway 51 has been designated as a controlled access highway since 1956. A controlled access highway is "a highway on which the traffic is such that [DOT] has ... declared it to be necessary ... to prohibit entrance upon and departure from the highway or street except at places specially designated and provided for such purposes, and to exercise special controls over traffic on such highway or street." WIS. STAT . § 84.25(2).
¶12 The freeway statute, WIS. STAT . § 84.295, does not define what constitutes a "freeway." However, Manthe relies on the definition of "[f]reeway" contained in WIS. STAT . § 990.01(9a).[2] Section 990.01(9a) defines "freeway" as "a highway with full control of access and with all crossroads separated in grade from the pavements for through traffic." Manthe argues that, because the improved portion of Highway 51 meets § 990.01(9a) 's definition of a freeway, Highway 51 must be designated as a freeway. There are several problems with this argument.
¶13 First, Manthe argues that DOT is compelled to declare a highway to be a freeway if the following preconditions are met: (1) it has a traffic volume of 4,000 vehicles per day; (2) DOT concludes that the volume and character of traffic and the public interest warrant the construction of a freeway; and (3) a public hearing on this issue is held by DOT.
¶14 Manthe asserts that Highway 51 has a traffic volume of 26,800 vehicles per day and that DOT scheduled a public hearing for Thursday, May 9, 2013. We assume without deciding that Manthe is correct on those two points. However, Manthe's assertion that the second requirement, that DOT determined that the volume and character of traffic and the public interest warranted the construction of a freeway, is unsupported by the record and is conclusory. This court need not consider conclusory assertions. See Associates Fin. Servs. Co. of Wis., Inc. v. Brown , 2002 WI App 300, ¶4, n.3, 258 Wis. 2d 915, 656 N.W.2d 56. Manthe thus fails to demonstrate that his asserted preconditions for designating part of Highway 51 as a freeway have been met.
¶15 Second, Manthe's assertion that DOT lacks discretion in deciding whether a section of highway should be designated as a freeway is legally baseless and contrary to the plain language of WIS. STAT . § 84.295(3).[3] Section 84.295(3) states that, if the criteria for the designation of a freeway are met, DOT "may by order designate" a section of highway as a freeway. (Emphasis added). Use of the word "may" in a statute creates a presumption that the statute is permissive. McGuire v. McGuire , 2003 WI App 44, ¶26, 260 Wis. 2d 815, 660 N.W.2d 308. Manthe attempts to rebut the presumption by focusing on the difference in compensation for the loss of access to a controlled access highway as opposed to the loss of access to a freeway, but presents this court with only conclusory, unsupported assertions. We are not persuaded. By the plain language of the statute, the preconditions for designating a freeway cited by Manthe are prerequisites for the exercise of DOT's discretion, not a mandate.
¶16 Further, language in WIS. STAT . § 84.295 removes any doubt that designation of a freeway is a discretionary obligation of DOT.[4] That section provides that a portion of a highway has the status of a freeway only "[a]fter the adoption of an order by [DOT]." § 84.295(9). It also provides that, "[t]he action of [DOT] relative to designation , layout, location or relocation of any part of a freeway or expressway shall be conclusive." § 84.295(5) (emphasis added).
¶17 Finally, Manthe argues, repeatedly and each time in a conclusory fashion, that what DOT built was a freeway because the improved portion of Highway 51 is four lanes in width and has access at only two intersections. However, this argument goes nowhere because WIS. STAT . § 84.25(3), which governs controlled access highways, gives DOT sufficient discretion to construct roads in whatever design meets the purpose of the controlled access designation. That power is sufficiently broad to encompass four lane divided highways. In addition, DOT is unambiguously given the discretion to close intersections. See § 84.25(3). The design characteristics of a roadway relied upon by Manthe are not unique to freeways.[5]
¶18 For all of these reasons, we conclude that the circuit court did not erroneously exercise its discretion by declining to issue a writ of mandamus.
B. There is No Violation of Equal Protection of the Law
¶19 Manthe contends that WIS. STAT . § 84.295(3) violates his right to equal protection by giving DOT discretion to construct a four lane closed access divided roadway and not classify that roadway as a freeway.
¶20 Constitutional questions present mixed questions of fact and law. We will uphold a circuit court's factual findings unless they are clearly erroneous, but we will independently decide whether those facts meet the constitutional standard. State v. Samuel , 2002 WI 34, ¶15, 252 Wis. 2d 26, 643 N.W.2d 423. "We generally presume that statutes are constitutional." League of Women Voters of Wis. Educ. Network, Inc. v. Walker , 2014 WI 97, ¶16, 357 Wis. 2d 360, 851 N.W.2d 302. A challenger has the very heavy burden of overcoming this presumption by proving that a statute is unconstitutional beyond a reasonable doubt. Id. , ¶17.
¶21 A statute can be subject to two different types of constitutional challenge - facial and as applied. Id. , ¶13. Here, Manthe makes a facial challenge. A person making a facial challenge must show that the law cannot be enforced under any circumstances. Id. , ¶15.
¶22 Equal protection guarantees that similarly situated persons are treated similarly. State v. Berge , 2004 WI App 105, ¶5, 273 Wis. 2d 481, 681 N.W.2d 282. It does not " 'require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made.' " Id. (quoted source omitted).
¶23 When reviewing an equal protection challenge, we generally employ one of two different levels of scrutiny, strict scrutiny or rational basis scrutiny. See Porter v. State , 2017 WI App 105, ¶14, 378 Wis. 2d 117, 902 N.W.2d 566. Strict scrutiny applies if a statutory classification implicates a fundamental interest or disadvantages a suspect class. Id. Manthe argues that his right to access Highway 51 is a fundamental right and that, therefore, we should apply strict scrutiny. However, he fails to support his argument with citation to any authority that confirms that any right he seeks vindicated here is a fundamental right entitled to strict scrutiny. We conclude, therefore, that the proper level of scrutiny here is rational basis scrutiny.
¶24 The rational basis standard in the equal protection context does not require that all individuals be treated identically, but any distinctions must be relevant to the purpose motivating the classification. Doering v. WEA Ins. Group, 193 Wis. 2d 118, 131-32, 532 N.W.2d 432 (1995). A statute will be upheld against an equal protection challenge if a plausible policy reason (a "rational basis") exists for the classification and the classification is not arbitrary in relation to the legislative goal. State v. Dennis H., 2002 WI 104, ¶¶31-32, 355 Wis. 2d 359, 647 N.W.2d 851. Once the court identifies a rational basis for a statute, the court must assume the legislature passed the act on that basis. See Aicher v. Wis. Comp. Patients Fund, 2000 WI 98, ¶57. 237 Wis. 2d 99, 613 N.W.2d 849.
¶25 Manthe argues that WIS. STAT . § 84.295(3) violates his right to equal protection because that statute treats landowners with property abutting a freeway differently than landowners with property abutting a controlled access highway. Under § 84.295(3), a landowner deprived of access to a freeway is entitled to compensation for loss of the access, while a landowner deprived of access to a controlled access highway generally is not. Under Manthe's argument, if a controlled access highway has the physical attributes of a freeway, as he defines those attributes, but DOT is not obligated to declare the controlled access highway to be a freeway, then those landowners abutting the controlled access highway are deprived of the right to full compensation for lack of access, even though they are, as Manthe argues, similarly situated to landowners whose property abuts freeways. The classification under scrutiny, therefore, is, according to Manthe's argument, that landowners whose property abuts highways that are designated freeways under § 84.295 are treated differently than other landowners whose property abuts highways that are designated controlled access highways under WIS. STAT . § 84.25.
¶26 DOT responds that landowners whose properties abut freeways and landowners whose properties abut highways that are physically similar but not designated as freeways are not similarly situated, and thus their disparate treatment does not raise equal protection concerns. DOT points out that, as stated in ¶11 above, landowners along freeways cannot have direct driveway access to the highway as a matter of law. See WIS. STAT . § 84.25(3). On the other hand, under § 84.25(3), DOT can restrict access "as [DOT] deems necessary or desirable." Thus, a landowner abutting a controlled access highway may still retain, or even obtain, driveway access, and in fact, Manthe has two driveways that directly access Highway 51, a controlled access highway. For this reason, DOT argues, landowners abutting a freeway and those abutting a controlled access highway are not similarly situated, and therefore, the difference between the two types of roadway do not constitute a classification for equal protection purposes.
¶27 We agree with DOT. We have already discussed that the physical attributes that Manthe argues describe a freeway are not supported by the statutory definition of a freeway. In addition, the plain language of the two statutes under consideration sets forth a statutory scheme that demonstrates that landowners with property abutting a freeway are not similarly situated to landowners whose property abuts a controlled access highway. Landowners along a freeway lose all right to access by virtue of the designation of the roadway as a freeway, and they either receive access via a frontage road or are appropriately compensated for that loss. On the other hand, landowners along a controlled access highway do not lose that access unless DOT deems in each individual case that loss of access is "necessary or desirable." Id. As long as DOT does not leave such a landowner without any access to their land, he or she is not entitled to compensation. See Hoffer Props., LLC v. DOT , 2016 WI 5, ¶31-37, 366 Wis. 2d 372, 874 N.W.2d 533 (loss of access along controlled access highway not compensable so long as the property is not deprived of all access to the highway).
¶28 Because landowners with land abutting freeways and landowners with land abutting a controlled access highway are not similarly situated, we have no reason to, and do not, consider whether there is a rational basis for their unequal treatment.
C. Manthe's Entitlement to Damages as a Result of the Lengthened Route of Travel
¶29 Manthe argues that the court erred in granting a motion by DOT, made prior to Manthe's settlement with DOT, that he is not entitled to damages as a result of his lengthened route of travel resulting from the Highway 51 improvement project. Relying on WIS. STAT . § 32.09(6), Manthe argues two bases for such compensation: increased dangerousness and increased travel time.
¶30 We turn first to the question of whether Manthe has shown that he should have been granted damages as a result of increased dangerousness from his new route of travel. Manthe moved the circuit court for compensation for the increased dangerousness of the travel between his parcels. At that time, the court took that issue under advisement and did not rule upon Manthe's motion. A final pretrial hearing was held on May 30, 2017. The minutes for that hearing indicate that there was a discussion of Manthe's motion for compensation for increased dangerousness of travel, but not that the court ruled on the motion. There is no other reference in the record to Manthe's motion. In particular, there is no indication that the court ever ruled on the motion prior to dismissal of the case on the parties' stipulation.
¶31 Manthe asserts that he is entitled to damages because his new route of travel following the improvement project is more dangerous. In support, he cites to Gieseke v. DOT , 145 Wis. 2d 206, 426 N.W.2d 79 (Ct. App. 1988), for the proposition that a loss in value to a condemner's property due to increased dangerousness in operating farm equipment due to DOT's highway improvement project is compensable. However, he does not explain how, or in what way, this issue was ruled on erroneously below, or even that it was ruled on at all. We reject this argument as insufficiently developed. See State v. Pettit , 171 Wis. 2d 627, 646-47, 4925 N.W.2d 633 (Ct. App. 1992).
¶32 We turn next to the question of whether the court erred in failing to determine that Manthe is entitled to compensation for his added time and expense due to the lengthened route of travel. The circuit court granted a motion in limine by DOT that expenses for Manthe's lengthened route of travel are not compensable. This issue requires us to construe the controlled-access highways statute, WIS. STAT . § 84.25, and the just compensation statute, WIS. STAT . § 32.09. We review de novo a question of law such as the interpretation of a statute. Hoffer , 366 Wis. 2d 372, ¶14.
¶33 In its written decision, the circuit court relied primarily on Hoffer , which, as we note above in ¶27, holds that the loss of access along a controlled access highway is not compensable so long as the property is not deprived of all access to the highway. Manthe argues that Hoffer is distinguishable, and not controlling here, because it involved the taking of a direct access, whereas Manthe seeks damages for increased travel where there is no taking of direct access. We are not persuaded.
¶34 Hoffer is predicated on the proposition that the designation of a controlled access highway is an exercise of police power. Id. , ¶23. In determining that the exercise of police power does not entitle a landowner to compensation for the elimination of an access, the court in Hoffer relied on the general principle that an exercise of police power is not a taking. See id. , ¶17. The court emphasized that in exercising police power, DOT can pursuant to WIS. STAT . § 84.25(3), " 'so regulate, restrict or prohibit access to or departure from [a controlled access highway] as [DOT] deems necessary or desirable.' " Id. , ¶25 (quoting § 84.25(3) ). DOT is specifically empowered in the exercise of its police powers under § 84.25(3) to "eliminate intersections."
¶35 Manthe argues in the alternative that he is entitled to compensation for the cost of his increased travel time pursuant to WIS. STAT . § 32.09(6)(e). However, we agree with the circuit court that § 32.09(6)(e) concerns only damages resulting from actual severance of land. There is no claim in this case that there is any actual severance of land. Manthe has the same two parcels that he had before the taking, with only small parts of the periphery of each parcel having been taken. Accordingly, we conclude that § 32.09(6)(e) does not apply here.
¶36 Manthe does not argue that the circuit court did not consider appropriate facts, and has failed to persuade us that Hoffer is not controlling here. Accordingly, we affirm the circuit court's grant of DOT's motion in limine.
CONCLUSION
¶37 For the reasons stated above, we affirm the order of the circuit court.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Wisconsin Stat . § 990.01 is one of the "words and phrases" statutes that contains general definitions of terms for use throughout the statutes.

In interpreting a statute, we turn first to the plain language of the statute itself. Lake City Corp. v. City of Mequon , 207 Wis. 2d 155, 162, 558 N.W.2d 100 (1997). If the meaning of a statute is clear from its language, we are prohibited from looking beyond such language to ascertain its meaning. Id . at 163.

"We interpret statutory language in the context within which it is used, 'not in isolation but as part of a whole; in relation to the language of surrounding or closely related statutes; and reasonably, to avoid absurd or unreasonable results.' " State v. Warbelton , 2008 WI App 42, ¶13, 308 Wis. 2d 459, 747 N.W.2d 717 (quoted source omitted).

We note that the definition of freeway utilized by Manthe in Wis. Stat . § 990.01(9a) does not refer to the number of lanes of the highway, nor whether the highway is divided. On the other hand, an expressway is defined as "a divided arterial highway," but, once again, there is no reference to the number of lanes. See § 990.01(7a). We are at a loss to understand on what basis Manthe argues that the fact that a highway has four lanes determines whether that highway is a freeway.